## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**ROBBIE KEETON GEIGER, as Administratrix**
**of the Estate of Ricky Keith Keeton, Deceased;**
**DELISHA KEETON MOONEY, and**
**MEGAN ARCHER**                                                      **PLAINTIFFS**

**V.**                                                      **CAUSE NO. 1:16cv95-SA-DAS**

**MONROE COUNTY, MISSISSIPPI**
**and ERIC SLOAN**                                                      **DEFENDANTS**

### MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

**NOW COME** Defendants, Monroe County, Mississippi and Eric Sloan, by counsel, and file their Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure* and Rule 7.2(d) of the *Uniform Local Rules* of the United States District Court for the Northern and Southern Districts of Mississippi, as follows:

### I. PREFACE

After a year long investigation and surveillance into Ricky Keith Keeton's alleged drug sales and activities, the Monroe County Sheriff's Department acquired a "no-knock" search warrant to search Mr. Keeton's residence. After coming onto the premises, announcing their presence and forcibly opening the door to the residence, Mr. Keeton met them at the door, pointed a weapon at the Monroe County Sheriff's Department, and fired at the front officer. Upon Mr. Keeton's discharge of his weapon, members of the Monroe County Sheriff's Department returned fire and Mr. Keeton was ultimately killed. This lawsuit deals with a §1983 claim, by the heirs of Mr. Keeton, for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution.

1

The issue for this Court to decide is whether Monroe County and Deputy Eric Sloan, acting in his capacity as a deputy with the Monroe County Sheriff's Department, are entitled to summary judgment as there is no genuine issue of material fact as to those issues which are outcome determinative. Under the "objective" standard that the Fourth and Fourteenth Amendments are analyzed, Plaintiffs have no factual support or evidence to establish liability on the part of the Defendants. Accordingly, summary judgment is proper.

## II. PLAINTIFFS' COMPLAINT

Plaintiffs' claims against the Defendants are enumerated in paragraph 20, subparts (A) through (L) of the Plaintiffs' Complaint and claim that the Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution.[1] In summary, they allege that there was no probable cause for the search warrant, that the Defendants used excessive/deadly force in causing Mr. Keeton's death when he was not a threat to the officers, and that the search warrant was allegedly for ulterior motives. Finally, Plaintiffs claim that Defendants improperly kept goods seized during the search warrant and evidence collection.[2] In any event, this matter is ripe for resolution at the summary judgment stage as there are no genuine issues of material fact in question but only application of applicable law.

## III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] [Doc. 1], Complaint.

[2] The improper seizure of goods claim has been resolved since the filing of this lawsuit by means of an outside legal action in the Monroe County Circuit Court and through the return of electronic evidence used during the current lawsuit.

2

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard further provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, which requires that there be no genuine issue of *material* fact. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 276 (5th Cir. 1987).

Materiality of a fact is determined by the substantive law at issue. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* Factual disputes that are irrelevant or unnecessary will not be counted. *Id., see generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure* § 2725, pp. 93–95 (1983). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam ), *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 1592 (1968).

## IV. FACTS

The Monroe County Sheriff's Department and Deputy Eric Sloan, head of the Narcotics Division of the Monroe County Sheriff's Department, had been conducting surveillance on Ricky Keith Keeton's residence on Sizemore Road for more than one year.[3] In the early morning hours of October 28, 2015, Deputy Sloan and Deputy Tony Coxey, also of the Monroe County Sheriff's Department, observed an individual[4] possibly conducting a late night/early morning drug sale at the Keeton residence. During a traffic stop by Monroe County Sheriff's Deputy Sam Mitchell, the

---

[3] Exhibit "A" - Sloan deposition, P41, L1-8.

[4] [Doc. 1-2], Complaint Exhibit "B" - Affidavit to Search Warrant.

individual who was observed leaving the Keeton residence was later determined to be Terry Parker, a confidential informant to Deputy Coxey.[5] During the traffic stop, Parker, after giving permission to have his vehicle searched, was found to be in possession of an "eight ball" of meth and a glass pipe. Parker later admitted to Deputy Coxey that he had just left Keeton's residence after purchasing the illegal drugs.[6]

After receiving this information, Deputy Tony Coxey prepared an affidavit and request for a "no-knock" search warrant and brought same to Monroe County Justice Court Judge Robert Earl Fowlkes. Judge Fowlkes was presented with the information noted above along with sworn oral testimony from Coxey (and possibly also got the information by phone from Deputy Sloan) and, ultimately, signed the "no-knock" search warrant for the residence of Ricky Keeton.[7]

During the time that Deputy Coxey was obtaining the search warrant from Judge Fowlkes, Deputy Sloan was in the process of gathering several Monroe County Sheriff's Department deputies at the Government Complex building in Amory, MS, to plan, prepare, and discuss how the search warrant was to be served and executed.[8] During the discussion of how the search warrant was to be executed and the premises entered, certain extenuating circumstances and threats of drugs, weapons, and dangerous dogs were raised by Deputies Sloan and Coxey. The deputies who were called upon to plan for, witness, assist and/or actively participate in the service and execution of the Keeton

---

[5] Exhibit "A" - Sloan deposition, P57, L12-25.

[6] Exhibit "B" - Parker deposition, P19, L2-24; Exhibit "A" - Sloan deposition (from search warrant affidavit), P57, L7-16.

[7] [Doc. 1-1], Complaint Exhibit "A" - Search Warrant.

[8] Exhibit "A" - Sloan deposition, P70, L19-25; P71, L1-7.

search warrant were Sheriff Cecil Cantrell, Chief Curtis Knight, Deputies Eric Sloan, Tony Coxey, Spencer Woods, Sam Mitchell, David Mitchell, Tim Coker, John Michael Lay, John Bishop, Chris Smith, Mike Edgeworth, and Ricky Payne. After a brief meeting to discuss and plan for how the search warrant would be served, the deputies loaded up and took three (3) vehicles to the Keeton residence.[9]

Upon arrival, Sheriff Cantrell, Chief Knight, and Deputies Edgeworth, Payne, and Smith stayed behind at the vehicles.[10] Deputies Sloan, Coxey, Woods, S. Mitchell, D. Mitchell, Coker, Lay, and Bishop proceeded in a single-file line to approach the Keeton residence. It had been planned and determined that Deputies Bishop and S. Mitchell would use tools to breach the door, that Deputies D. Mitchell and Coker would disassemble the sewage drain pipe coming from the residence, and that the rest of the deputies would enter the residence.

Once in position at the front door of the residence, Deputies S. Mitchell and Bishop used a halogen "ramming" tool and pry bar to breach the door. As the door was being pried open, the deputies began announcing their presence by yelling "Sheriff's Department, Search Warrant."[11] Wanda Stegall, Keeton's live-in girlfriend, was with Keeton and testified that he heard people coming, woke her up and told her people were approaching, grabbed his pistol, and went to the door.[12] Keeton never made it into the kitchen to release his dogs. As the door was being pried open,

---

[9] Exhibit "C" - Smith deposition, P21, L1-9.

[10] Exhibit "C" - Smith deposition, P20, L17-25; P21, L1-6.

[11] Exhibit "D" - Lay deposition, P11, L11-25; P12, L1-3; Exhibit 7 to Lay deposition.

[12] Exhibit "E" - Stegall deposition, P29, L4-25; P29, L1.

Keeton was standing at the door with a weapon in his hand.[13]  He yelled obscenities at the deputies and then fired his weapon at the deputies.[14]  As Deputy Sam Mitchell saw Keeton firing at him, and various other deputies heard the weapon being discharged, they began firing their service weapons at the door and threat area.  Within seconds, the firing stopped, and the deputies were able to enter and secure the premises.  At that time, Keeton was found on the floor and ultimately died.

After the premises were secured, Wanda Stegall was brought out of the residence and given her Miranda rights (which were at the time waived), and she spoke with Sheriff Cantrell and Deputy Sloan.  She advised Sloan that Keeton knew the deputies were coming due to several live-feed and recorder cameras that had been placed and/or installed around the premises.  This was confirmed by Wanda Stegall and multiple officers who observed live-feed video being broadcast into the bedroom area.[15]  Stegall later informed Sloan that Keeton had woken her up when he knew the officers were coming, admitted that Keeton had a pellet pistol in his hands when he went to the door to address the coming officers, and admitted to the existence/presence of a significant amount of drugs and/or illegal substances that were still in the residence located in a green ammo can beside their bed in the bedroom, which was later confirmed by the investigating Monroe County Sheriff's Department

---

[13] Exhibit "A" - Sloan deposition, P74, L1-3; P75, L1-22; P76, L1-6; Exhibit 2 to Sloan deposition;   Exhibit "E" - Stegall deposition (Entire deposition as Stegall's lawyer, Jim Waide, invoked Stegall's 5th Amendment rights at the very beginning of the deposition; P28; P29); Exhibit "F" - Coxey deposition, P19, L5-25; P20, L1-15.

[14] Exhibit "D" - Lay deposition, P12, L22-25; P13, L1-14;   Exhibit "A" - Sloan deposition, Exhibit 2.

[15] Exhibit "A" - Sloan deposition, Exhibit 2;   Exhibit "D" - Lay deposition, P18, L23-25; P19, L1-16; Exhibit 7 to Lay deposition;   Exhibit "F" - Coxey deposition, P21, L3-25; P22, L1-2; Exhibit 9 to Coxey deposition;   Exhibit "E" - Stegall deposition, P23, L17-25; P24, L1-25; P25, L2-25; P27, L1-14;   Exhibit "G" - S. Mitchell deposition, P12, L7-25; P13, L1-5.

6

search of the Keeton residence.[16]

Due to the events that had transpired, Chief Deputy Curtis Knight informed the Mississippi Bureau of Investigation (hereinafter "MBI"), a division of the Mississippi Department of Public Safety, of the shooting, and the MBI advised Knight that they were en route to perform an investigation of the shooting. As the MBI was on the way, Deputy Sloan stopped his questioning of Ms. Stegall.[17]

All investigative action by the Monroe County Sheriff's Department, in regards to the Keeton search warrant and investigation into the Keeton residence, stopped until the MBI arrived at the Keeton residence. The MBI arrived and performed their investigation into the officer-involved shooting. The MBI officers who were involved in investigation of the incident were Kenny Bailey, Cory Burrow, and Greg Nester. Based on a review of the MBI investigation file, their actions consisted of securing the weapons of the Monroe County Sheriff's Department deputies who fired their weapon during the event, taking or obtaining statements of deputies and witnesses to the event, collecting evidence, and taking measurements and photographs of the scene.[18]

Once the MBI completed their processing of the scene, the area was released back to the Monroe County Sheriff's Department, who undertook their own investigation and evidence

---

[16] Exhibit "A" - Sloan deposition, Exhibit 2; Exhibit "E" - Stegall deposition (Entire deposition as Stegall's lawyer, Jim Waide, invoked Stegall's 5th Amendment rights at the very beginning of the deposition; P28; P29); Exhibit "F" - Coxey deposition, P19, L5-25; P20, L1-15.

[17] Exhibit "A" - Sloan deposition, Exhibit 2; Exhibit "E" Stegall deposition (Entire deposition as Stegall's lawyer, Jim Waide, invoked Stegall's 5th Amendment rights at the very beginning of the deposition; P28; P29).

[18] Exhibit "H" - Burrow deposition, P8, L5-7; P8, L10-25; P11, L1-7; P19, L8-25; P20, L1-21; Exhibit "I" - Nester deposition, P6, L25; P7, L1-19.

collection of the scene and the Keeton residence. During the processing and investigation, a green ammo can was located in the bedroom, just as Ms. Stegall had told Deputy Sloan, which contained eleven (11) bags of clear/pink crystal-like substances, and said bags were sent off by Deputy Tony Coxey to be analyzed by the Crime Lab.[19] According to the laboratory analysis by the Columbus Forensic Lab of the contents collected at the Keeton residence, all eleven (11) bags that were discovered in the Keeton ammo can were determined to be "Amphetamine and Methamphetamine" of various amounts. The eleven (11) bags contained a total of 205.55 grams of Amphetamine and Methamphetamine, which is the subject of a pending criminal charge of drug trafficking against Wanda Stegall in the Circuit Court of Monroe County, in Cause No. CR2016-134.[20]

## V. LAW

### A.    FOURTH AMENDMENT

The United State Supreme Court, in the case of *Graham v. Connor*, 490 U.S. 386 (1989), set forth the standard for which Fourth Amendment claims are to be analyzed. In *Graham*, an individual brought a §1983 action against the Charlotte (North Carolina) Police Department and multiple officers for injuries sustained as a result of the officers' use of physical force during an investigatory stop. The Supreme Court in *Graham* held that "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of

---

[19] Exhibit "F" - Coxey deposition, P19, L5-25; P20, L1-13;   Exhibit "F" - Coxey deposition, P19, L5-25; P20, L1-15.

[20] Exhibit "J" - GEIGER8 - GEIGER13, Defendants' Initial Core Disclosures (Monroe County Circuit Court criminal file on Wanda Stegall in Case No. CR2016-134, as to drug charges stemming from the events which are the subject of the current lawsuit.);   Exhibit "E" - Stegall deposition (Entire deposition, although starting at P4, L1, Stegall's attorney, Jim Waide, invokes Stegall's Fifth Amendment rights against self incrimination as it relates to Stegall's drug charges, pending in Case  No. CR2016-134, in the Monroe County Circuit Court.).

a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. 386, 395 (1989) To determine "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* at 396, (other citations omitted). The Court further held that a proper analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

As to the "reasonableness" of the officers' actions, the Court held that "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, citing *Terry v. Ohio*, 492 U.S. 1, 20-22 (1968). The *Graham* Court noted that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham* at 396-397. In essence, the "question is **whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.**" *Id.* at 397 (other citations omitted). (Emphasis added.)

## B.     VALIDITY OF THE SEARCH WARRANT FROM AN OFFICER PERSPECTIVE

The Fourth Amendment permits the issuance of search warrants only "upon probable cause,

supported by Oath or affirmation." *U.S. Const. Amend. IV.* Inherent in this language is "the obvious assumption that there will be a truthful showing" of facts to support probable cause, meaning that "the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware,* 438 U.S. 154, 164-65, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (quotation omitted). Thus, if there is substantial evidence to support deliberate falsehood or reckless disregard for the truth, and the exclusion of false statements would undermine the existence of probable cause, a warrant is invalid. See *Id.* at 171-72, 98 S.Ct. 2674.

### 1) TYPICAL ROUTE TO A CHALLENGE

In determining the sufficiency of a search warrant, law enforcement officers face a two-part inquiry:

1) whether the good faith exception to the exclusionary rule applies, and

2) whether the official who issued the warrant had a substantial basis for concluding

that probable cause existed. *Id.*

If the good faith exception applies, no further analysis is conducted, and the district court's denial of the motion to suppress will be affirmed. *United States v. Cherna,* 184 F.3d 403, 407 (5th Cir. 1999).

### 2) FIFTH CIRCUIT APPLICATION OF THE GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE ANNOUNCED IN *UNITED STATES V. LEON*

In general, an officer may rely in good faith on the validity of a search warrant so long as the warrant is supported by more than a bare bones affidavit. *United States v. Cherna,* 184 F.3d 403 (5th Cir. 1999) The Fifth Circuit case of *United States v. Cherna* is instructive on application of the good-faith exception to the exclusionary rule announced in *United States v. Leon,* 468 U.S. 897, 104

10

S.Ct. 3405, 82 L.Ed.2d 677 (1984)),

> We begin our analysis of the good-faith exception with Leon. In that case, the Supreme Court held that the Fourth Amendment does not require the suppression of evidence obtained as a result of objectively reasonable reliance on a warrant, even if the warrant is subsequently invalidated. See *Leon,* 468 U.S. at 922, 104 S.Ct. 3405. Although the Court noted that "[w]hen officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time," *id.* at 924, 104 S. Ct. 3405, it also cautioned that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant the issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued," *id.* at 922–23, 104 S. Ct. 3405 (footnotes and citation omitted). Thus, the good-faith exception does not apply when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923, 104 S.Ct. 3405. Similarly, suppression remains an appropriate remedy where the issuing magistrate "wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant." *Id.* Nor is the exception available to an officer who relies on a warrant based on an affidavit *408 " 'so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable.' " *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring)). "Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.*

*United States v. Cherna,* 184 F.3d 403, 407–08 (5th Cir. 1999)

The above case is broken down into four (4) convenient lines of attack as summarized by this

2001 opinion:

> The Amendment requires only that the law enforcement officer's reliance on the warrant be objectively reasonable. The good-faith exception does not apply, and suppression is an appropriate remedy, under any one or more of four situations: (1) The issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence

11

entirely unreasonable; (4) the warrant itself was so facially deficient that the executing officers could not have reasonably relied on its validity.

*United States v. Barnett,* 273 F.3d 1094 (5th Cir. 2001)

*Analysis from Barnett*

"Satisfied that the district court's findings are free of clear error, we conclude that none of these four situations is present in Barnett's case. First, as found by the district court, Agent Navarro, on whose affidavit the magistrate relied, neither materially misstated any facts in his affidavit nor omitted any material facts from it. He was an experienced law enforcement officer who included the relevant aspects of his investigation in his statement to the magistrate. Second, the magistrate did not abandon his judicial role and act as part of the law enforcement team. The district court found that the magistrate was impartial and that he based his decision solely on the information within the four corners of the affidavit. Third, the affidavit and warrant were not so lacking in indicia of probable cause as to make reliance on them entirely unreasonable. As we have held, when a warrant is supported by more than a "bare bones" affidavit, officers may assume in good faith that it is valid. Here, Agent Navarro's affidavit detailed the results of the criminal investigation leading up to the seeking and granting of the warrant. It included specific information derived from the surveillance of Barnett and his co-conspirators. Finally, the warrant itself was not facially deficient. It specified the place to be searched and the evidence to be seized, if found. The district court found that Agent Navarro's affidavit established an ongoing pattern of criminal activity and that it contained nothing to indicate that, after the activity had ceased to operate from B & W, Barnett had moved his drug distribution operation anywhere but to his home." *United States v. Barnett*, 273 F.3d 1094 (5th Cir. 2001).

*Holding from Barnett*

"As the actions of the magistrate and the executing officers do not fall into any of the four situations described above, the good-faith exception applies. The district court correctly concluded that the evidence recovered from the search of Barnett's residence need not be suppressed. Having decided on the admissibility of the seized evidence under the *Leon* guidelines, we follow the teachings of *Cherna* and *Craig* and decline to address whether the magistrate had a substantial basis for finding probable cause." *United States v. Barnett*, 273 F.3d 1094 (5th Cir. 2001).

a) **"Whether the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied"**

As the above issue applies to the current matter, the question becomes whether Judge Robert Fowlkes, the Monroe County Justice Court Judge who signed the Keeton search warrant that is at issue in this case, was misled by Monroe County Sheriff's Deputy Tony Coxey, who knowingly, or with a reckless disregard for the truth, provided the affidavit on which Judge Fowlkes relied upon. In *Atwood v. Cheney*, 2016 WL 3910658, (N.D., Miss. 2016) District Court Judge Aycock addressed search warrant/affiant issues similar to the ones at hand, granted summary judgment as to several law enforcement officers, and opined as follows:

> "Although issues of fact may exist as to the roles that [defendants] played in the investigation, and in providing some of the information to [the affiant], these issues of fact are not material to the [claim of causing a warrant to be issued without probable cause] because none of the evidence suggests that [defendants] prepared or presented the warrant or were fully responsible for its preparation or presentation." *Id* at *5; see also, *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007) (granting qualified immunity to defendants who were neither the affiant nor the person who actually prepared the warrant application.)

*Atwood v. Cheney*, No. 1:12-CV-168-SA-DAS, 2016 WL 3910658, at *5 (N.D. Miss. July 14, 2016),

13

appeal dismissed (Sept. 27, 2016).

As is confirmed by Monroe County Sheriff's Deputy Tony Coxey, Defendant/Deputy Eric Sloan, and Judge Robert Fowlkes, Deputy Tony Coxey, a reliable law enforcement officer, prepared an application affidavit in support of the application for the Keeton search warrant, delivered same to Judge Robert Fowlkes's residence, and provided Judge Fowlkes not only with the affidavit, but also with oral/sworn testimony and information serving as the basis for the Keeton search warrant.[21] This information included: the witnessing by Deputies Sloan and Coxey of a confidential informant leaving the Keeton residence; the traffic stop of the confidential informant (Terry Parker) and Parker having illegal drugs on him that the informant admitted to having just purchased from Keeton; and that the informant disclosed to Deputy Coxey that there were other drugs, cameras and dogs on the Keeton property.[22] Judge Fowlkes even had personal knowledge that Keeton was known in the community to deal in drugs.[23] All of the facts above are undisputed. And while the Plaintiffs' Complaint alleges that the warrant itself authorized a "no-knock" entry without showing circumstances to justify, the facts and information relayed to Judge Fowlkes by Deputy Coxey support such and are, to date, not contested by the Plaintiffs.

Should it be alleged that Deputy Coxey misled Judge Fowlkes, the case of *U.S. v. Davis*, 226 F.3d 346 (5th Cir. 2000) provides guidance. "To impeach the warrant, [plaintiff] must show that [the

---

[21] Exhibit "K" - Fowlkes deposition, P16, L3-25; P18, L1-3.

[22] Exhibit "B" - Parker deposition, P18; P19, L2-24; Exhibit "A" - Sloan deposition (from search warrant affidavit), P57, L7-16; Exhibit "F" - Coxey deposition, P15, L19-25; P16, L1-10; P27, L9-24.

[23] Exhibit "K" - Fowlkes deposition, P8, L4-25; P9, L1-10; P10, L5-11; Exhibit "F" - Coxey deposition, P15, L19-25; P16, L1-10; P27, L9-24; Exhibit "A" - Sloan deposition, P56, L14-25; P57, L1-4.

law enforcement officer providing the affidavit] either deliberately or recklessly misled the magistrate and that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." See *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The necessary falsehood can be perpetrated by omission as well as commission, but the **omission must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause**. (Emphasis added) See *United States v. Bankston*, 182 F.3d 296, 305 (5th Cir.1999), cert. granted on other grounds, 529 U.S. 1017, 120 S.Ct. 1416, 146 L.Ed.2d 309 (2000) (No. 99–804); *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir.1995).

It is undisputed that Terry Parker purchased drugs from Keeton on the night of the incident. It is undisputed that Parker further informed Deputy Coxey that Keeton had multiple dangerous dogs and cameras at the location and that Keeton still had in his possession a significant amount of drugs.[24] As the above facts are not in dispute, and there has been no allegation that Deputy Tony Coxey and/or Eric Sloan misled Judge Folwkes in the obtaining of the search warrant, or acted in a manner which was in a reckless disregard for the truth, this prong is satisfied.

   b)   **"Whether the Warrant represents a complete abdication by the Magistrate Judge of his authority to determine what can and cannot be seized." .... and that the town justice " did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure," ..... that he instead conducted himself as an "adjunct law enforcement officer."[25]**

---

[24] Exhibit "K" - Fowlkes deposition, P8, L4-25; P9, L1-10; P10, L5-11; P17, L3-22; Exhibit "F" - Coxey deposition, P15, L19-25; P16, L1-10; P27, L9-24;  Exhibit "A" - Sloan deposition, P56, L14-25; P57, L1-4.

[25] **PLAINTIFFS MAY SEEK TO CREATE AN ISSUE THAT** per *United States v. Breckenridge,* 782 F.2d 1317, 1321 (5th Cir.1986) ("The 'absence of a neutral and detached

The Fifth Circuit Court of Appeals, in the case of *U.S. v. Cherna*, 184 F.3d 403 (5ᵗʰ Cir. 1999), discussed a situation where a magistrate conducts himself in a complete abdication of his duties by looking at the magistrate judge in *Lo-Ji Sales, Inc. vs. New York*, 442 U.S. 319, 99 S. Ct. 2319, (1979). There, an investigator purchased two films from a New York "adult" bookstore, concluded that they violated state obscenity laws, and applied for a warrant to search the entire store, representing to the magistrate that not only copies of the films, but other "similar items" would be found there. *Lo-Ji Sales*, 442 U.S. at 321. The justice court judge viewed the films and issued a search warrant authorizing seizure of the films, but also, seizure of all other items that the court has determined to be in violation of the state law, and left a blank space for the investigator and law enforcement to fill in. The justice court judge then accompanied law enforcement officers to the store and conducted a six-hour search, during which he examined films, books, and magazines, free of charge and ordered the officers to seize such items as he thought there was probable cause to believe obscene. *Id.* at 322-23. The Court, while recognizing that a warrant authorized by a neutral and detached judicial officer is a more reliable safeguard, noted that the justice court judge, in performing the acts above, "did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure. . .but instead, conducted himself as an 'adjunct law enforcement officer.'" *Id.* at 327, *Cherna* at 408.

As was noted by the Court in *U.S. v. Leon*, 468 U.S. 897, 915 (other citations omitted) (1984), reviewing courts will not defer to a warrant based on an affidavit that does not "provide the

---

magistrate' exception to *Leon*'s good faith may also extend to situations in which officers while presenting the affidavit realize that the ***magistrate served only to rubber-stamp*** a previous decision reached by the police."). Based on the evidence above, no "rubber-stamping" took place as sufficient facts were provided to establish probable cause.

magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S., at 239, 103 S.Ct., at 2332. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* See *Aguilar v. Texas*, supra 378 U.S., at 114–115, 84 S.Ct., at 1513–1514; *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

In the present matter, Deputy Tony Coxey witnessed his confidential informant, Terry Parker, leave the Keeton residence. After Parker was involved in a traffic stop and found to have illegal substances on him, he asked to speak with Deputy Coxey. Parker admitted to Coxey that he had just purchased the drugs at Keeton's residence and that Keeton still had more drugs at his residence.[26] This information was conveyed to Judge Robert Fowlkes by Deputy Coxey, not only by written affidavit, but also by oral/sworn testimony. Judge Fowlkes executed the search warrant in question. Based on the reliable and credible information Judge Fowlkes had received, he believed probable cause existed to execute the Keeton "no-knock" search warrant, especially due to officer safety, and did so.[27]

There is no evidence that Judge Fowlkes simply "rubber stamped" a decision reached by the police/Monroe County Sheriff's Department, and there is no allegation that Judge Fowlkes acted in such a manner. As such, this prong of the analysis is satisfied.

---

[26] Exhibit "B" - Parker deposition, P19, L6-25; P20; P26, L11-25; P27, L1-25; P29, L10-25; P33, L1-21; Exhibit "K" - Fowlkes deposition, P8, L4-25; P9, L1-10; P10, L5-11; Exhibit "F" - Coxey deposition, P15, L19-25; P16, L1-10; P27, L9-24; Exhibit "A" - Sloan deposition, P56, L14-25; P57, L1-4.

[27] Exhibit "K" - Fowlkes deposition, P8, L4-25; P9, L1-10; P10, L5-11; P15, L23-25; P16; P17, L1-23.

c)      Whether "the warrant was insufficiently supported by a showing of probable cause" ... that the warrant was merely "supported by a bare bones affidavit" ...[28]

d)      Whether "the warrant is so lacking in particularity that the executing officers could not reasonably have presumed it to be valid"

Defendants group the above two prongs together as the same facts and evidence establish the two. Clearly, the affidavit and supporting testimony of Tony Coxey *established a sufficient causal nexus between the drugs and related evidence to the residence*, and it was therefore sufficiently particular that a reasonable officer could rely upon it.

> The seminal Supreme Court case on particularity and the good-faith exception is *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). That case concerned a warrant authorizing a search for "controlled substances" that was accompanied by a detailed affidavit indicating that the affiant wished to search for evidence relating to a homicide investigation. See *Id*. at 985–86, 104 S.Ct. 3424. The defendant complained that the warrant was insufficiently particular. See id. at 987, 104 S.Ct. 3424. It was undisputed, however, that the issuing judge and the executing officers knew the contents of the affidavit and the focus of the search and that the affiant had, in fact, pointed out the discrepancy to the judge, who had assured him that the necessary corrections would be made. See id. at 986, 104 S.Ct. 3424. The Court concluded that the officers' good-faith reliance on the warrant was objectively reasonable because the affiant prepared an affidavit that was reviewed and approved by the district attorney, presented the affidavit to a neutral judge, who found that it established probable cause for the search requested by the affiant, and informed the judge that changes might need to be made. He then observed the judge made some changes and received the warrant and the affidavit. See id. at 989, 104 S.Ct. 3424. "At this point, a reasonable police officer would have concluded ... that the warrant authorized a search for the materials outlined in the affidavit." *Id*.

*United States v. Cherna*, 184 F.3d 403, 411 (5th Cir. 1999)(Applying the constitutional analysis on particularity and the good-faith exception articulated in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)).

---

[28] *United States v. Humphrey,* 104 F.3d 65, 68–69 (5th Cir.), cert. denied, 520 U.S. 1235, 117 S.Ct. 1833, 137 L.Ed.2d 1038 (1997).

We have previously held that a warrant may satisfy the requirements of the Fourth Amendment even though it describes the objects to be seized only in generic terms. See *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir.1986), see also *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir.), cert. denied, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (holding that in situations which make detailed particularity impossible then "generic language suffices if it particularizes the types of items to be seized"). In *Kunze*, we upheld an "all records" search of a business "[w]here probable cause exist [ed] to believe that an entire business was merely a scheme to defraud, or that all the records of a business are likely to constitute evidence." *Id*.

The Keeton residence search warrant, being supported by the affidavit and sworn oral testimony of Deputy Tony Coxey and signed by Judge Fowlkes, particularly identifies the following items at paragraph 3:

> "Methamphetamine .... and any and all controlled substances, paraphernalia ... and all U.S. Currency derived from the sale of said methamphetamine ..., found in close proximity to [said drugs] or associated with [said drugs]. Any other items of value associated with, in close proximity to or derived from the sale of [said drugs]. To also include diaries and surveillance equipment that would obtain information on or about the time and day of purchase or sale of any [and] all illegal substances. This is to include the property, resident, vehicles, and all other structures on said property."[29]

This language not only contains the "generic" terms as discussed by the Court in *Cherna*, but also identifies, with particularity, those things to be searched for and seized. According to the undisputed findings, the Monroe County Sheriff's Department discovered 205.55 grams of Methamphetamines in the bedside table in a green ammo can, just as admitted by Wanda Stegall and just as analysis by the crime lab confirmed.[30]

---

[29] [Doc. 1-1], Complaint Exhibit "A" - Search Warrant; (Also referenced in Exhibit "A" - Sloan deposition and attached as Exhibit 3 to Sloan deposition).

[30] Exhibit "A" - Sloan deposition, Exhibit 2;   Exhibit "E" - Stegall deposition (Entire deposition as Stegall's lawyer, Jim Waide, invoked Stegall's 5th Amendment rights at the very beginning of the deposition; P28; P29);   Exhibit "F" - Coxey deposition, P19, L5-25; P20, L1-15;   Exhibit "J" - GEIGER8 - GEIGER13, Defendants' Initial Core Disclosures (Monroe County Circuit Court criminal file on Wanda Stegall in Case No. CR2016-134, as to drug charges

The Fifth Circuit, in *United States v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997) opined as follows as to search warrants:

> Good-faith exception to Fourth Amendment's exclusionary rule applied to allow admission of computer images and files seized from defendant's residence, in prosecution for receiving child pornography, even though search warrant was not sufficiently particularized, since attachment listing specific items to be seized and affidavit were not attached to or incorporated by reference in the warrant, where law enforcement agent who sought warrant and submitted the affidavit reviewed affidavit and warrant application with other agents, and presented it to United States Attorney's Office for review, **judge who issued warrant carefully reviewed affidavit and attachments,** and signed both the affidavit and warrant, and prior to executing the warrant, the other agents who participated in search reviewed affidavit, attachment, and warrant. *Id.*

Furthermore, in *United States v. Allen,* 625 F.3d 830 (5th Cir. 2010), the Fifth Circuit held that:

> Probable cause existed to establish a nexus between the defendant's residence searched and the evidence sought in search warrant; the affidavit contained specific assertions by officer that **surveillance established** that defendant had been in co-defendant's apartment the day that a large amount of methamphetamine was found there, that co-defendant said that defendant sold him two to three pounds of methamphetamine a week for four months at $11,000 per pound, identified defendant as the man who sold him the drugs, and, defendant's car was observed at his residence and defendant was the owner of the residence.

In the present matter, after having conducted a significant amount of surveillance on the Keeton residence, and on the night in question, Deputies Eric Sloan and Tony Coxey witnessed Terry Parker leaving Keeton's residence. Parker, who was later involved in a traffic stop, was found to have methamphetamines on him that he admitted to Deputy Coxey were purchased from Keeton and that Keeton still had more illegal drugs at his residence.[31] After receiving this information, Deputy Coxey prepared an affidavit and provided sworn/oral testimony to Judge Robert Fowlkes, who

---

stemming from the events which are the subject of the current lawsuit.)

[31] Exhibit "B" - Parker deposition, P33, L5-25; P34, L1-3; P19, L4-25; P20, L1-8; Exhibit "G" - S. Mitchell deposition; Exhibit 11 to S. Mitchell deposition.

ultimately found probable cause and signed the "no-knock" search warrant which is the subject of this lawsuit.  Based on the undisputed facts above, and in comparison to the Fifth Circuit case law above, the Monroe County officers were reasonable in believing that the search warrant was valid and not lacking in particulars.  Accordingly, the third and fourth prongs are satisfied.

### C.  ATTEMPTING ENTRY VIA "NO-KNOCK" WARRANT

As all officers yelled announcing themselves as the Monroe County Sheriff's Department, a team began to immediately strike the door to attempt entry while others disabled the sewer line. Even with live-feed surveillance equipment, the speed of the officers negated Keeton from ever releasing his dogs or destroying the significant stash of methamphetamine.[32]  Significantly, "a police officer views the facts through the lens of his police experience and expertise." *Ornelas v. United States*, 517 U.S. 690, 699–700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

**CONSTITUTIONAL ISSUE FOR COUNTY SUMMARY JUDGMENT:**

Whether the "no-knock" warrant issued by Monroe County Justice Court Judge Robert Fowlkes on oath or affirmation by Monroe Count Narcotics Agent Tony Coxey was based upon a reasonable suspicion that knocking and announcing their presence before attempting entry would be dangerous or futile, or that it would inhibit the effective investigation of the crime.

The general rule is that an officer must knock and announce his presence and authority before entering a residence. *Trent v. Wade*, 776 F.3d 368, 378 (5th Cir. 2015).  In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their

---

[32] Exhibit "G" - S. Mitchell deposition, P6, L5-25; P7-12; P13, L1-12;  Exhibit "D" - Lay deposition, P11, L11-25; P12, L1-3; Exhibit 7 to Lay deposition;  Exhibit "A" - Sloan deposition, P74, L1-3; P75, L22-25; P76, L1-6; Exhibit 2 to Sloan deposition;  Exhibit "E" - Stegall deposition (Entire deposition as Stegall's lawyer, Jim Waide, invoked Stegall's 5th Amendment rights at the very beginning of the deposition; P28; P29);  Exhibit "F" - Coxey deposition, P19, L5-25; P20, L1-15.

presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. *Id*., Page 378 (Quoting *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416, 137 L. Ed. 2d 615 (1997))

The reasonableness of an officer's decision "must be evaluated as of the time [he] entered the [dwelling]." *Id*. at 395, 117 S.Ct. 1416. Moreover, we know that an announcement is not required where "the police ... have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime[.]" *Id*. at 394, 117 S. Ct. 1416. The showing of reasonableness necessary to overcome the "knock-and-announce" requirement "is not high." *U.S. v. Washington*, 340 F.3d 222, 226 (5th Cir.2003) (quoting Richards, 520 U.S. at 394, 117 S.Ct. 1416.). Ultimately, we know that "this showing is not high." *Id*. 520 U.S. at 394.

Specifically, we know from *United States v. Rodriguez*, 548 F. App'x 230, 232 (5th Cir. 2013) that advanced consideration of these factors independent of what was authorized by warrant is significant to the constitutional inquiry before the Court. There, Deputy U.S. Marshal Austin Phillips (hereinafter "Phillips") testified that Preston Browning (hereinafter "Browning"), a supervisor with the Marshal Service, decided that the officers would execute the warrant without knocking and announcing their presence. In reaching that decision, Browning **considered "the safety of the personnel"** and the **possibility of "people flushing the narcotics down the toilet."** According to Phillips, there was **information from the undercover officer that Rodriguez had a firearm** in his waistband when the undercover officer initially purchased cocaine from Rodriguez. Similarly, Deputy U.S. Marshal Hector Arreola, also part of the arresting team, testified that **Browning informed officers that "there had been guns present during a previous purchase of**

22

**narcotics at the residence."** Newman also testified that, prior to the October 11 entry, he had reviewed Rodriguez's **"criminal history and discovered that Rodriguez had previously been charged with possession of narcotics and unlawful possession of a weapon."** In short, the entry was consistent with the mandates of the Fourth Amendment.

Considering *Rodriguez* here, we see the hours of training of a tactical unit (which Eric Sloan led), the assembly of officers for a pre-raid briefing, protective clothing, assigned positions and preparation to cut the sewer line to prevent flushing of evidence. The objective threat of a known drug dealer believed to be armed and protected by dogs, the potential for resistance, and the fact that the raid was the subject of a major crime were actual things considered.[33] Moreover, in light of the presence of drugs, weapons, cameras, and possibly dangerous dogs, Judge Robert Fowlkes considered the safety of the officers and approved the "no-knock" search warrant.[34] Here again, the attempted entry of the Ricky Keeton residence was consistent with the mandates of the Fourth Amendment.

### D.    USE OF DEADLY FORCE

As the Fifth Circuit noted in *Hill v. Carroll County, Miss.*, 587 F.3d 230, (5th Cir. 2009), "to recover [under an excessive force, 4th Amendment claim],[a claimant] must show: (1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir.1999). To

---

[33] Exhibit "A" Sloan deposition, P56, L5-13; P70, L8-25; P71-72; P73, L1-14; Exhibit 2 to Sloan deposition;   Exhibit "D" - Lay deposition, P5, L12-25; P6, L1-16; P9, L15-25; P10, L1-24; P17, L7-24; Exhibit 7 to Lay deposition;   Exhibit "G" - S. Mitchell deposition, Exhibit 12; Exhibit "L" - Knight deposition, P23, L8-25; P24-25; P26, L1-25.

[34] Exhibit "K" - Fowlkes deposition, P17, L3-22.

23

determine whether the force used by officers is unreasonable, the Fourth Amendment prescribes a case-specific balancing exercise in which "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest ..." all play a part. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court in *Graham* explains the necessary perspective in evaluating the use of force:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight .... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989). Further, only the objective reasonableness of force matters for Fourth Amendment purposes - **an officer's subjective motivation and intent are irrelevant.** *Id*. at 397, 109 S.Ct. 1865. (Emphasis added.) The court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts. See *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir.1991) (finding no Fourth Amendment violation where an officer shot and killed an unarmed suspected who the officer reasonably believed to be armed). For that reason, when reviewing a grant of summary judgment in the Fourth Amendment context, after first construing disputed historical facts in favor of the non-movant, the court must then ask how a reasonable officer would have perceived those historical facts.

The Fifth Circuit, in the case of *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007), dealt with a suit by the parents of a teenage motorist who was fatally shot and killed. As the officer approached the teenage driver who had stopped, the vehicle suddenly accelerated towards the officer. Unable

to get out of the way, the officer discharged his weapon as he was stuck by the speeding car. In upholding summary judgment, the *Hathaway* court looked to the guidance provided by *Graham v. Connor* and held as follows:

> The reasonableness of an officer's use of deadly force is therefore determined by the existence of a credible, serious threat to the physical safety of the officer or to those in the vicinity. And, critically, reasonableness in these circumstances 'must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

*Hathaway v. Bazany,* 507 F.3d at 320-321, citing *Graham v. Connor*, 490 U.S. 386, 396-97 (U.S. 1989)(other citations omitted).

The Fifth Circuit, in *Rodriguez v. Jones*, 473 F.2d 599 (5th Cir. 1973), dealing with very similar facts, addressed a §1983 claim when law officers were forced to engage in a gun fight during the execution of a warrant and entry of a premises. The officers here were under a mistaken belief that murder suspects were on the Plaintiff's premises. The Court, in upholding a judgment in favor of the officers and precluding recovery/officer liability, applied the same criterion of "reasonableness" and opined that in light of the events that had transpired (multiple officers having been killed, murderers not apprehended, information that suspects were on the premises), the officers acted reasonably, even if their belief was mistaken. *Id.* at *7.

In the current matter, and as has been established herein, Deputies Sloan and Coxey witnessed a confidential informant leaving the Keeton residence. This confidential informant was later found to have illegal substances on him, that he had admittedly just purchased from Keeton. The informant stated that Keeton had more illegal substances at his residence and also had dangerous dogs and possibly weapons at his residence. The safety of the officers during the

execution of this search warrant was a concern for the judge who executed the search warrant. Upon attempted entry to the residence, this concern was exemplified as Keeton, a convicted felon, essentially "lay in wait" and met the officers with a gun in hand that he fired at the officers as they attempted entry. These circumstances were no doubt tense and uncertain and rapidly evolved, due to Keeton's resistance and violent actions, into a situation that required deadly force.

The reasonableness of the officers is confirmed not only by the undisputed facts above, but also by the findings of Robert L. Johnson, Defendants' law enforcement expert, a copy of whose report of opinions is attached hereto as Exhibit "M" along with Defendants' designation of experts. After a review of a substantial amount of material including party and witness depositions, Fourth Amendment materials, law enforcement guidelines and resources, applicable case law, and generally accepted information regarding practices and procedures of law enforcement, Mr. Johnson opined that the Monroe County Sheriff's Department followed proper procedure in obtaining and executing the "no-knock" search warrant for the Keeton residence, that the use of deadly force was reasonable and justified, and that the seizure of property from the scene was in accordance with law and generally accepted standards of law enforcement practices and procedures. (See Exhibit "M".)

## E. INDEPENDENT/IMPARTIAL INTERMEDIARY

According to well established law "[i]f facts supporting an arrest are placed before an independent intermediary, such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for [claims of] false arrest, insulating the initiating party." *Glenn v. City of Tyler*, 242 F.2d 307, 313 (5th Cir. 2001)(see also, *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). The chain of causation is broken only where all facts are presented to the grand jury, or other independent intermediary, or where the malicious motive of the law enforcement officials does not lead them to

26

withhold any relevant information from the independent intermediary. *Id.* (See also, *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)). Under this doctrine, "even an officer who acted with malice ... will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). Our precedents have applied this rule even if the independent intermediary's action occurred after the arrest and even if the arrestee was never convicted of any crime. *Buehler v. City of Austin/Austin Police Department*, 824 F.3d 548, 555 (5th Cir. 2016).

In *Taylor v. Gregg,* 36 F.3d 453, 457 (5th Cir. 1994), the court held that allegations of malice are not sufficient to overcome the defense. In that case, like here, the Plaintiff contended that the intermediary's findings were based on false and misleading information. *Id.* at 457 (observing that the intermediary breaks the chain of causation unless it can be shown its deliberations were in some way tainted by the defendants. Once the moving party makes a showing that no genuine issue of material facts exists, the burden shifts to the opposing party who must counter with sufficient evidence showing a genuine issue). Following *Taylor,* this court noted, in a case in which the plaintiff contended the defendants withheld relevant exculpatory evidence, that the doctrine is equally applicable in a malicious prosecution context because the central issue addressed is probable cause. *Sullivan v. Boyd Tunica, Inc.,* No. CIV A 206CV016-B-A, 2007 WL 541619, at *4 (N.D. Miss. Feb. 16, 2007). There, this Court further noted that under *Taylor*, "evidence of tainting must be set forth and that '[m]ere allegations are insufficient.'" *Id.* Furthermore, unless it can be shown that the deliberations of the intermediary were in some way tainted by the actions of the defendant,

an independent intermediary breaks the change of causation. *Id.* As was shown in both *Taylor* and *Sullivan,* the impact of the Plaintiff not meeting this burden is dismissal.

In *McAllister v. Desoto County,* 2011 WL 2516260 (N.D. Miss. June 23, 2011)(Aff'd Per Curiam), a narcotics investigation proceeded from purchases by a confidential informant to ultimate indictment and arrest of the wrong person because identification information for "*Connie McAllister*" from a prior arrest was erroneously substituted for the drug-dealing "*Connie Mac.*" At the district court level, this Court applied both the independent intermediary defense and determined that probable cause existed in spite of the error. In affirming summary judgment, the Per Curiam decision simply looked to the later. *McAllister v. Desoto County, Miss.*, 470 Fed. Appx. 313, *5 n. 4 (5th Cir. 2012) (observing that generally, in considering a post-indictment arrest challenge, the arrest is evaluated in light of the indictment, however because the Plaintiff argued her indictment was improperly obtained due to lack of probable cause, the probable cause to arrest should be examined absent the indictment).

Here, sufficient probable cause exists from the objective facts before the Court, and the independent intermediary defense applies. While it may be contended that the independent intermediary doctrine is limited to qualified immunity, this contention has previously been explicitly rejected in the Northern District of Mississippi. See *Edmonds v. Oktibbeha Cty.,* Miss., No. 1:09CV00070-B-D, 2010 WL 4942273, at *5 (N.D. Miss. Nov. 30, 2010), aff'd, 675 F.3d 911 (5th Cir. 2012)("*Murray* therefore resolves the implication in *Burzynski* that a superseding cause defense is unavailable to officers in a Section 1983 case."). Therefore, the doctrine of independent intermediary breaks the chain of causation for false arrest, thus insulating Sloan and the County from liability in this case.

28

Whether the warrant is analyzed under *Leon*, or simply as the product of a neutral judge within his jurisdiction with the meeting with Officer Coxey in close temporal proximity to officers arresting a source who had provided reliable information in the past, with drugs in his possession directly upon leaving the Keeton residence earlier that night, we have an independent consideration of a specific major crime by a known offender working out of his residence that very night and an authorization of appropriate protections for the officers' safety and the preservation of evidence. The officers here had a legitimate constitutional authorization to be on the Keeton property and to attempt a high speed entry. Regardless of how many depositions have been taken or pages of briefing left to come, Ricky Keeton was dealing methamphetamine out of his residence. Moreover, Ricky Keeton was not able to hurt any of the officers, release his dogs, take his house guest hostage, or flush the drugs.

## F.    OFFICIAL CAPACITY LIABILITY

The foundation of municipal liability under Section 1983 is that a plaintiff must have suffered a constitutional violation as a result of an official policy, custom, or practice promulgated by municipal policymakers. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir.2009).

It is well-established that a county is not liable under §1983 on the theory of respondeat superior. *Peterson*, 588 F.3d at 847, see also *Bryant ex rel. Bryant v. City of Ripley*, Miss., No. 3:12CV37-B-A, 2015 WL 686032, at *6 (N.D. Miss. Feb. 18, 2015). A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur. *Peterson*, 588 F.3d at 847. To establish municipal liability under §1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.

*Id*.

Official policy establishes culpability and can arise in various forms. *Id*. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id*. A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *Id*. Thus, a plaintiff must show the policy was promulgated by the municipality's policymaker. *Id*. There is no "de facto" final policymaking authority. *Id*. The plaintiff must also show "either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences." *Id*. (citing *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir.2004). "A showing of simple or even heightened negligence will not suffice." *Id*.

Furthermore, as the Fifth Circuit opined in *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001), in addition to culpability, there must a direct causal link between the municipal policy and the constitutional deprivation and that the policy must be the 'moving force' behind the violation. *Id.* citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The Court went on to note that "the reason the policies or customs must be disaggregated should be clear. Taken together, they express no single municipal policy but only a series of adversarial conclusions...(e.g., "the Houston Police Department was up for sale in 1980") relating to her individual case...(Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."

*Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A customary municipal policy cannot ordinarily be inferred from single constitutional violations. See, e.g., *Webster*, 735 F.2d at 851.

Here, Plaintiffs have not alleged that any official policy, custom or practice of the Monroe County Sheriff's Department violates federal law or authorizes the deprivation of federal rights with deliberate indifference as to its known or obvious consequences but simply makes unfounded allegations of a "rogue" deputy (in Eric Sloan and his alleged acts to steal $20,000.00 from a Mexican cartel/drug supplier/Keeton. [Doc. 1, Complaint, at ¶1]. Furthermore, Sheriff Cantrell, the ultimate County policymaker, took no part in the surveillance, application, or acquisition of the search warrant and/or entry into the Keeton residence. Deputy Sloan, although the head of the Narcotics Division of the Monroe County Sheriff's Department, cannot render the municipality liable unless he executes some "violative" policy, to which again, there has been no allegation of evidence to establish. There is no evidence that Sheriff Cantrell or even Deputy Sloan acted with a deliberate indifference as to Keeton's rights. Any claim that the County should be held responsible is unwarranted and should be foreclosed as no official policy is at issue. *Id*.

## VII.  CONCLUSION

The death of Ricky Keeton is a sad and tragic event. His reputation in the community as an allegedly kind, poor, friendly, or even hard working man, unfortunately, has no bearing on the issue at hand.

According to the undisputed facts, the Monroe County Sheriff's Department suspected that Keeton was selling drugs from his home and had a significant amount of drugs there. This was confirmed during a long surveillance period and a traffic stop of a confidential informant. The

31

Monroe County Sheriff's Department (in particular, Deputy Tony Coxey) provided sworn testimony which supported a finding of reasonable cause and the execution of a search warrant by Judge Fowlkes. The Monroe County Sheriff's Department met, discussed the possible dangers of drugs, weapons, dogs, and cameras located on Keeton's property, and planned out how the warrant would be served and executed. During the execution and service of that warrant, Keeton confronted the deputies by pointing a gun and firing at them. Due to the tense, dangerous, uncertain and evolving events that unfolded, the Monroe County Sheriff's deputies were forced to defend themselves from Keeton's violent and possibly drug-induced actions. Their actions were necessary and reasonable under the circumstances and according to all legal analysis.

**WHEREFORE, PREMISES CONSIDERED**, the Defendants pray that the Court find, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and based on the above, that there exists no genuine issues of material fact and that all Defendants are entitled to judgment as a matter of law, in whole or in part, on the issues presented.

**NOW, THEREFORE** Defendants pray that upon consideration hereof, the Court enter its order as follows:

(A)     That this Court grant the Defendants' Motion for Summary Judgment and dismiss Plaintiffs' Complaint with prejudice; and,

(B)     That this Court award these Defendants their attorneys' fees, costs and expenses associated with the defense of the instant civil action pursuant to Rule 11, *Federal Rules of Civil Procedure* and The Mississippi Litigation Accountability Act of 1988, and *Miss. Code Ann.* §11-1-54 (2003).

**RESPECTFULLY SUBMITTED** this the 1st day of November, 2017.

**JACKS GRIFFITH LUCIANO, P.A.**

By:    <u>/s/ **Arnold U. Luciano**</u>
        Arnold U. Luciano, MS Bar No. 8366
        Attorney for Defendants, Eric Sloan and
        Monroe County, Mississippi

Of Counsel:

**JACKS GRIFFITH LUCIANO, P.A.**
150 North Sharpe Ave.
P. O. Drawer 1209
Cleveland, MS 38732
Telephone: 662-843-6171
Fax: 662-843-6176
Email: aluciano@jlpalaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Arnold U. Luciano, attorney of record for Defendants Eric Sloan and Monroe County, Mississippi, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum in Support of Summary Judgment* to be delivered by the ECF Filing System which gave notice to the following Counsel of Record:

    Jim D. Waide, III, Esq.
    WAIDE & ASSOCIATES, PA
    P. O. Box 1357
    Tupelo, MS 38802-1357
    Telephone: 662-842-7324
    Fax: 662-842-8056
    Email: waide@waidelaw.com

    R. Shane McLaughlin, Esq.
    McLAUGHLIN LAW FIRM
    P.O. Box 200
    Tupelo, MS 38802
    Telephone: 662-840-5042
    Fax: 662-840-5043
    Email: rsm@mclaughlinlawfirm.com

**DATED** this 1st day of November, 2017.

        <u>/s/ **Arnold U. Luciano**</u>
        Arnold U. Luciano

33
