# *United States Court of Appeals*

**FIFTH CIRCUIT
OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130**

August 30, 2019

Mr. David Crews
Northern District of Mississippi, Aberdeen
United States District Court
301 W. Commerce Street
Aberdeen, MS 39730

    No. 18-60480   Robbie Geiger, et al v. Monroe County, MS
                        USDC No. 1:16-CV-95

Dear Mr. Crews,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Majella A. Sutton, Deputy Clerk
                        504-310-7680

cc:
    Mr. Daniel J. Griffith
    Mr. Arnold U. Luciano
    Mr. Richard Shane McLaughlin
    Mr. Jim D. Waide III
    Mrs. Rachel Pierce Waide

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 18-60480

D.C. Docket No. 1:16-CV-95

United States Court of Appeals
Fifth Circuit
**FILED**
August 8, 2019
Lyle W. Cayce
Clerk

ROBBIE KEETON GEIGER, as Administratrix of the Estate of Ricky Keith Keeton, Deceased; DELISHA KEETON MOONEY; MEGAN ARCHER,

       Plaintiffs - Appellees

v.

DEPUTY ERIC SLOAN,

       Defendant - Appellant

Appeal from the United States District Court for the
Northern District of Mississippi

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

**Certified as a true copy and issued as the mandate on Aug 30, 2019**

Attest: *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60480

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2019

Lyle W. Cayce
Clerk

ROBBIE KEETON GEIGER, as Administratrix of the Estate of Ricky Keith Keeton, Deceased; DELISHA KEETON MOONEY; MEGAN ARCHER,

  Plaintiffs–Appellees,

v.

DEPUTY ERIC SLOAN,

  Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:16-CV-95

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

PER CURIAM:*

This qualified-immunity appeal stems from a drug-bust SWAT raid gone wrong. An attempted "no knock" entry led to a firefight in which the suspect died. The suspect's daughters sued the lead deputy officer, and the district court denied qualified immunity. We AFFIRM that denial.

I

Deputy Eric Sloan set up a SWAT raid of suspected drug dealer Ricky Keeton. Sloan had been surveilling Keeton for about a year. One night, Sloan

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and his colleague saw one of their informants leave Keeton's trailer home. They radioed patrol units to stop the informant, and the responding officers found a glass pipe and methamphetamine in the informant's car. The informant told Sloan and his colleague, who arrived on the scene shortly after, that Keeton had a large amount of meth in his trailer as well as $20,000 in cash.

Sloan's colleague prepared an affidavit and search warrant, and Judge Fowlkes signed off on it. Right after, Sloan assembled a SWAT team and briefed them on Keeton's property layout, his camera locations, and his several dogs. After arriving at the trailer, the SWAT team went around back; their plan—to crease the porch door in with a battering ram and pry it open with a crowbar.

As the team was getting ready, Keeton woke up. Telling his girlfriend that he'd heard something outside, Keeton grabbed his pellet gun. The SWAT team then supposedly rammed the door and pried it open. But Keeton's girlfriend says that the deputies never announced who they were and that Keeton opened the door himself.

Deputy Sloan offered two competing reports of what he saw inside the trailer once the door was open: First, in his official statement, he said that a shirtless Keeton fired a black handgun and yelled "you son-of-bitches"; second, in his deposition, Sloan said that he would not have been able to see Keeton unless he'd stepped out onto the porch.

A firefight ensued. It's unclear who shot first. Keeton's girlfriend says that Keeton closed the door and the officers started shooting. In any event, Keeton wound up with 6 bullet wounds and 50 bullet holes in his trailer. Despite first-aid attempts, Keeton died on the scene. The officers recovered nine ounces of meth, but the $20,000 was never found.

II

Keeton's daughters sued Deputy Sloan as well as the county. They allege that Sloan violated Keeton's Fourth Amendment rights by organizing a no-knock raid and by causing his death.

The district court found that Sloan lacked a reasonable suspicion that knocking and announcing his presence would be dangerous or futile. The district court also found two genuine issues of material fact—the disparity between Sloan's story and Keeton's girlfriend's story; and Sloan's own conflicting stories. The court held that these disputes of material fact bear on whether Sloan violated Keeton's Fourth Amendment rights. So it denied him qualified immunity.

III

The district court had jurisdiction under 28 U.S.C. § 1331. Sloan timely appealed. And this court has jurisdiction to review the denial of qualified immunity to the extent that it's based on legal conclusions.[1] In other words, we review only whether certain conduct would be objectively unreasonable as a matter of law.[2] This court reviews the denial of summary judgment de novo, viewing the facts in the light most favorable to the nonmovant.[3]

IV

Under Supreme Court precedent, government officials have a right to qualified immunity when carrying out their duties.[4] But under the familiar framework, plaintiffs can overcome it by showing that the officer violated their clearly established right.[5] Essentially, it's a two-prong test—(1) whether the

---

[1] *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997).
[2] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).
[3] *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014).
[4] *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982).
[5] *Id.*; *see also Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

officer violated a right; and (2) whether that right was clearly established. And as the Supreme Court explained in *Wesby*, "clearly established" means that either "controlling authority" explicitly adopts a rule or else there is a robust consensus of persuasive authority.[6]

The plaintiffs here have asserted two Fourth Amendment claims: one based on the no-knock entry and one based on the use of deadly force. We take them in that order.

A

The plaintiffs successfully alleged a no-knock violation. The Supreme Court established the standard for no-knock entries in its 1997 decision *Richards*.[7] The officers "must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."[8] And drug investigations don't automatically meet this requirement.[9] Rather, the court must consider the actual circumstances of each particular case.[10] Because controlling authority dictates that officers must have reasonable suspicion, the alleged violation is clearly established.

Moving to the supposed violation, there are three reasons why it isn't clear that Deputy Sloan had reasonable suspicion; and thus why plaintiffs have alleged a constitutional violation.

First, the warrant doesn't reveal a reasonable suspicion. There is only one reference in the warrant to "no knock"—a mention that the officer who

---

[6] *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).
[7] *Richards v. Wisconsin*, 520 U.S. 385, 394–95 (1997).
[8] *Id.* at 394.
[9] *Id.* at 396.
[10] *See id.*

4

prepared the affidavit "requests a no-knock search due to officer safety and the protection of further evidence." But the warrant does not go so far as to say that it grants a no-knock entry; nor does it or the accompanying affidavit explain how the officers announcing their presence would create any danger, futility, or risk of inhibiting the investigation.

Second, the plaintiffs allege that knocking would not have been problematic for the officers. Although Sloan in his deposition said that the informant told his colleague that Keeton had guns, that issue is not properly before us. The district court found it to be undisputed that no one ever questioned the informant about weapons. And thus, under Supreme Court caselaw, we must accept that finding for this interlocutory appeal.[11]

Even if we did have jurisdiction to review this finding, it would not matter. There does appear to be sufficient evidence to create a genuine dispute on this issue. Sloan says that the informant told one officer, who in turn told another officer, who then told Sloan that Keeton had weapons. But in his deposition, the informant said that no one ever asked him about weapons. Nor was this weapon information included in the affidavit or warrant. The plaintiffs also allege that the back-door cameras were disabled. And the plaintiffs allege that officers cut off the sewage line before conducting the raid, mitigating the possibility for evidence destruction. Besides, Sloan in his deposition explained that it was customary for his office to conduct night-time, no-knock raids for drug busts. Thus there are genuine disputes of material fact which bear on whether conducting a no-knock raid violated Keeton's rights. This is not to say that Sloan will not prevail at trial. Instead, the plaintiffs have merely alleged a violation. They still have the burden of refuting the

---

[11] *See Behrens v. Pelletier*, 516 U.S. 299, 312–13 (1996).

officers' story. In this appeal, the genuineness of factual disputes is not within our jurisdiction.

Third and finally, the independent intermediary doctrine does not apply here. Under that doctrine, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[12] But here, the plaintiffs don't challenge the warrant; only the no-knock entry. It's disputed whether the warrant authorizes a no-knock entry.

Thus, the district court was correct to deny qualified immunity on this claim.

B

The plaintiffs have also successfully alleged an excessive-force claim. As the Supreme Court recently explained in *Plumhoff*, by using excessive force, an officer violates the victim's right.[13] Deadly force is excessive unless the officer reasonably believes that a suspect poses a threat of serious harm.[14] So often the question is whether perceiving a threat was reasonable. But that inquiry must be made with close attention to the particular facts of the case.[15]

The Supreme Court has explained several times that reasonableness is based on the perspective of an officer on the scene; not clinical hindsight.[16] The officer must "believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."[17] That threat must be

---

[12] *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (quoting *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)).
[13] *Plumhoff*, 572 U.S. at 774.
[14] *See id.* at 774–75.
[15] *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015).
[16] *Plumhoff*, 572 U.S. at 775; *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007); *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).
[17] *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

Case: 18-60480    Document: 00515099576    Page: 7    Date Filed: 08/30/2019
Case 1:16-cv-00495-LMB-DAS Doc #: 133 Filed: 09/03/19 9 of 10 PageID #: 2363

No. 18-60480

imminent. It cannot be a past threat. As this court explained in *Manis*, the focus is on what made the officer shoot.[18] Thus, it's clearly established that when an officer uses deadly force unreasonably, without perceiving an imminent threat, that violates a plaintiff's rights.

But here there are disputes of material fact that bear on whether the officers reasonably perceived a threat of imminent harm. Namely, the district court found that there was a dispute of fact over whether Sloan saw a gun. We cannot question the genuineness of that dispute.[19] First, Keeton's girlfriend's story completely diverges from Sloan's. She says that Keeton opened the door to see the officers on his patio and, out of fear, closed it. Only after then was there any shooting. But Sloan says that the officers battered the door in and only shot when they saw Keeton with a gun. Yet the girlfriend's story contravenes Sloan's story that Keeton came out of the house guns blazing. In fact, Sloan himself told two conflicting stories: one in which he looked into the trailer and saw Keeton shooting; and one in which he didn't see Keeton. In any event, the girlfriend's story directly refutes the idea that the officers shot because they had a gun pointed at them. And if the girlfriend's story is believed, then Sloan (by his admission) could not have seen a gun. If Sloan did not see a gun, then he could not have reasonably perceived a threat of imminent harm and should not have used deadly force.

Consider, for contrast, the Supreme Court's 2015 decision in *Mullenix*.[20] There, the earlier Fifth Circuit holding denied qualified immunity for an officer who shot a fleeing fugitive.[21] The Supreme Court admonished this court against defining constitutional violations too generally. In other words, courts

---

[18] *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009).
[19] *See Behrens*, 519 U.S. at 312–13.
[20] *Mullenix*, 136 S. Ct. at 308–12.
[21] *Id.* at 307.

ought not improperly treat the perception of a threat as a fact question instead of a legal question. Yet in that case, although many facts were in dispute, certain facts the Court found critical were not: that the fugitive claimed to have a gun and was speeding down a highway.[22]

Here, that's not the case. With a disputed story, it's hard to assess whether—as a matter of law—Sloan reasonably thought that Keeton posed a threat of imminent harm. The district court was thus right to deny qualified immunity on this basis as well. Because the disputed facts are material to the question of whether a reasonable officer would conclude that Keeton posed a threat of imminent harm, we conclude that summary judgment is inappropriate at this stage.

\* \* \*

The district court correctly denied qualified immunity. AFFIRMED.

---

[22] *See id.* at 310 ("By the time Mullenix fired, Leija had led police on a 25-mile chase at extremely high speeds, was reportedly intoxicated, had twice threatened to shoot officers, and was racing towards an officer's location. . . . Given Leija's conduct, we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have perceived a sufficient threat and acted as Mullenix did.").