IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**ROBBIE KEETON GEIGER, as**                                                                        **PLAINTIFFS**
**Administratrix of the Estate of Ricky**
**Keith Keeton, Deceased, et al.**

**V.**                                                                                                                **NO. 1:16-CV-95-DMB-DAS**

**MONROE COUNTY, MISSISSIPPI,**
**et al.**                                                                                                                             **DEFENDANTS**

## ORDER

Before the Court is the "Plaintiffs' Motion to Strike Defendants' Expert Designation and to Exclude Expert Testimony at Trial" with respect to the defendants' designation of Robert L. Johnson "as an expert witness on 'law enforcement.'" Doc. #101.

## I
## Procedural History

On June 6, 2016, Robbie Keeton Geiger, as the Administratrix of the Estate of Ricky Keith Keeton, as well as Delisha Keeton Mooney and Megan Archer, filed a complaint in the United States District Court for the Northern District of Mississippi against Monroe County, Mississippi, and Eric Sloan. Doc. #1. The plaintiffs assert federal claims and claims under Mississippi's wrongful death statute arising from the shooting death of their father, Ricky Keith Keeton, during the execution of a search warrant at his home and from the seizure of his property, also during the execution of the warrant. *Id.* at 7–8.

On November 1, 2017, the County and Sloan, in his official capacity, filed a motion for summary judgment, Doc. #97; and Sloan, in his individual capacity, filed a motion for summary judgment asserting a defense of qualified immunity, Doc. #99. The same day, the plaintiffs filed a motion to strike the defendants' expert designation of Robert L. Johnson and to exclude

Johnson's testimony on grounds that the designation "is made up of legal conclusions and determinations of disputed facts regarding the facts of the shooting the night of Ricky Keeton's death." Doc. #101 at 1. The plaintiffs timely responded in opposition to the motion. Doc. #104.

On June 18, 2018, United States District Judge Sharion Aycock denied the two motions for summary judgment. Doc. #142. Sloan appealed the denial of his summary judgment motion to the Fifth Circuit Court of Appeals. Doc. #148. The Fifth Circuit affirmed Judge Aycock's decision on August 8, 2019. Doc. #159. Following remand, Judge Aycock recused herself and the case was reassigned to the undersigned district judge on February 27, 2020. Doc. #162.

## II
## Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

A "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "As long as there are sufficient indicia that an individual will provide a reliable opinion on a subject, a district court may qualify that individual as an expert." *Id*. (internal quotation marks omitted).

"[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant, … but also in the sense that the expert's proposed opinion would assist the trier of fact to

understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (internal alterations and quotation marks omitted). "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal alterations and quotation marks omitted). When considering reliability, *Daubert* provides that trial courts should consider (1) "the extent to which a given technique can be tested;" (2) "whether the technique is subject to peer review and publication;" (3) "any known potential rate of error, the existence and maintenance of standards governing operation of the technique;" and (4) "whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion, Inc.*, 171 F.3d 308, 311–12 (5th Cir. 1999)).

In addition to the specific factors enumerated in *Daubert*, the Advisory Committee's Note to the 2000 Amendment to Rule 702 states that the following five "factors remain relevant to the determination of the reliability of expert testimony:"

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.

3

> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
>
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
>
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
>
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment (internal quotation marks and citations omitted). Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

### III
### Analysis

Robert Johnson is the President and Chief Executive Officer of RLJohnson&Associates, LLC, a "full service security, consulting, investigative and training firm" located in Jackson, Mississippi. Doc. #101-2 at 1. He is also the Managing Partner of Probation Services Company of Mississippi, LLC, "a private probation company that provides supervision to offenders in the criminal justice system." *Id*. Johnson has further served as the Federal Security Director for Detroit Metro Airport, the Commissioner of the Mississippi Department of Corrections, and the chief of police for various municipalities. *Id*. at 1–4.

> Johnson's expert report purports to address three issues:
>
> (1) whether or not there was negligence in obtaining and in the execution of the no-knock search warrant in accordance with law, due process and generally accepted police practices and procedures; and (2) whether or not the use of deadly force was justified and reasonable and in accordance with generally accepted standards of law enforcement; and (3) whether the seizure of property from the scene of the incident

4

> was in accordance with generally accepted standards of law enforcement practices and procedures.

Doc. #101-3 at 2 (emphasis omitted). To answer these questions, Johnson reviewed (1) statements related to the shooting; (2) "Criminal Affidavits and Search Warrants of the Monroe County Sheriff's Department from 2011-2015;" (3) a February 29, 2016, report from the Columbus Forensic Laboratory confirming that a bag found during the search tested positive for Amphetamine and Methamphetamine; (4) toxicology reports from the officers involved in the shooting which did not detect the presence of illegal drugs or alcohol; (5) a postmortem toxicology analysis from Keeton which indicated Amphetamine and Methamphetamine; and (6) an October 29, 2015 autopsy of Keeton. *Id*. at 13–14.

Based upon this review, Johnson, relying substantially on the model policies promulgated by the International Association of Chiefs of Police, issued the following opinions: (1) "the Monroe County Sheriff's Department followed proper procedure in obtaining and executing the no-knock warrant;" (2) "the use of deadly force by Monroe County Sheriff's Department was reasonable, justified and in accordance with generally accepted standards of law enforcement;" and (3) "the seizure of property from the scene of the incident was in accordance with law and generally accepted standards of law enforcement practices and procedures." *Id*. at 14, 17–18.

In their motion, the plaintiffs argue that (1) Johnson's report contains numerous inadmissible legal opinions; (2) Johnson improperly resolved disputed facts; (3) Johnson's report contains opinions related to toxicology, a field he is unqualified to opine on; and (4) Johnson's opinions cannot be "tested" so as to be deemed reliable under *Daubert*. Doc. #102 at 6–9.

### A. Legal Opinions

Ordinarily, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, an expert may not "render conclusions of law." *United States v.*

5

*Thomas*, 847 F.3d 193, 206 (5th Cir. 2017). Indeed, the inadmissibility of legal opinions is "so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle." *In re Initial Pub. Offering Sec. Litig.*, 174 F.Supp.2d 61, 64 (S.D.N.Y. 2001).

The plaintiffs argue that Johnson's report contains the following legal conclusions: (1) "a definition of probable cause and the Fourth Amendment warrant requirement;" (2) "opinions as to how probable cause may be established;" (3) "opinions on the reliability of confidential informants;" (4) "opinions on the propriety of no-knock warrants," including that "the Monroe County deputies acted appropriately in obtaining a no-knock warrant;" (5) "opinions on when deadly force is constitutionally justified;" (6) an opinion "that the use of deadly force in this case was constitutionally justified;" (7) an opinion "that the seizure of property was constitutional;" and (8) an opinion "that the Constitution was 'adhered to' by the Monroe County Deputies." Doc. #102 at 6–7.

### 1. Definition of probable cause and warrant requirement

The plaintiffs' memorandum brief cites page 2 of Johnsons' report as containing improper opinions regarding the law of warrants and probable cause. Doc. #102 at 6. The defendants respond that "Johnson does not offer any legal definition of probable cause and/or Fourth Amendment requirements. Page 2 of Johnson's report simply provides a short version of the facts and defines the 'Action Requested.'" Doc. #104 at 11.

While it is true that page 2 does not contain references to the legal standards of probable cause, page 4 contains a section, titled in bold and underlined, "Authority for Probable Cause Search Warrants and Seizure of Property." Doc. #101-3 at 4. This section discusses the Fourth Amendment's warrant requirement, the steps needed to obtain a warrant, and the definition of probable cause. *Id*.

The prohibition against legal opinions extends to "legal conclusions that tell the jury what result to reach," *Thomas*, 847 F.3d at 206, and "opinion testimony about 'what the law is,'" *United States v. Rothenberg*, 328 F. App'x 897, 902 (5th Cir. 2009). To the extent Johnson has opined on the legal requirements of the Fourth Amendment, such opinions are improper.[1] *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (citing with approval *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988), which excluded, among other things, testimony "that warrantless searches were unlawful")).

### 2. How probable cause is established

The plaintiffs also object to Johnson's opinions regarding how probable cause is established. Doc. #102 at 6. These opinions, like the general statements regarding the warrant requirement, are opinions as to what the law is and, therefore, are inadmissible.

### 3. Opinions on reliability of confidential informants

Johnson's report quotes the International Association of Chiefs of Police ("IACP") Model Surveillance Policy for the proposition that "[s]urveillance must be based on reasonable suspicion." Doc. #101-3 at 5. The report then states that "probable cause can … be established by sufficient details provided by a trustworthy informant who has had personal observation that evidence was present and that crimes had been committed; and who has provided reliable and credible information in the past that resulted in arrests or convictions." *Id.* (citing *Jones v. United States*, 913 F.2d 174 (4th Cir. 1990)). The defendants contend this is not an "opinion on the

---

[1] In a wrongful seizure action brought under the Lanham Act, the Fifth Circuit affirmed a district court's decision allowing a lawyer to testify as to the legal requirements for an ex parte seizure when the testimony went to an issue of fact in the case—"what a reasonable lawyer needs to investigate and determine before seeking" an ex parte seizure order. *Waco Int'l, Inc. v. KHK Scaffolding Hous. Inc.*, 278 F.3d 523, 533 (5th Cir. 2002). The reasonableness of the officers' actions under the Fourth Amendment, however, is a question of law, not fact. *Keller v. Fleming*, 952 F.3d 216, 222 (5th Cir. 2020). Reasonableness under the qualified immunity inquiry is also a question of law. *Heaney v. Roberts*, 846 F.3d 795, 802 n.3 (5th Cir. 2017). Accordingly, *Waco* is inapposite.

reliability of confidential informants." Doc. #104 at 11. The Court agrees with the defendants that this is not an opinion on the general reliability of confidential informants. However, it is clearly an opinion on how probable cause can be established. It therefore is an improper legal opinion which must be excluded.

4. **Opinion on propriety of no-knock warrants and opinion that Monroe County deputies acted appropriately in obtaining and executing the no-knock warrant**

Johnson's report contains two opinions regarding no-knock warrants. First, Johnson sets forth the general law regarding no-knock warrants. *See* Doc. #101-3 at 5. Later, he concludes that "the Monroe County Sheriff's Department followed proper procedure and generally accepted standards of law enforcement practices and procedures in obtaining and executing the no-knock warrant." *Id*. at 16. The plaintiffs object to both opinions as improper legal conclusions. Doc. #102 at 7.

First, to the extent Johnson's report merely sets forth the law of no-knock warrants, these opinions are impermissible for the reasons explained above. Second, while the opinion regarding compliance with "law enforcement practices and procedures" is not expressly a legal conclusion, it is clear, within the context of Johnson's report, that it is offered as one. The bulk of the standards and procedures incorporated in Johnson's rationale for his opinion are simply legal standards. For example, Johnson's analysis states that "[o]fficers have the responsibility of establishing probable cause," "[o]fficers must complete affidavits and obtain search warrants from a magistrate judge," and "[t]he key … is that the law enforcement officer is swearing to the court that his facts supporting probable cause are accurate to best of his knowledge." Doc. #101-3 at 15. Thus, Johnson's analysis and opinions with respect to the obtaining of the no-knock warrant appears simply to be that the officers complied with applicable policies and procedures *because they complied* with the law's requirements. This is, of course, improper. *See Porter v. Lear*, 751 F.

8

App'x 422, 433 (5th Cir. 2018) (expert opinion on existence of probable cause improper legal conclusion); *but see Hayter v. City of Mount Vernon*, 154 F.3d 269, 274 (5th Cir. 1998) (no manifest error on admission of expert opinion on probable cause).

With respect to the execution of the warrant, Johnson opines that the agents acted "consistent with the customary and generally accepted practices of law enforcement officers executing no-knock search warrants" because the commanding agents briefed the search teams "on the facts and circumstances" of the search, the officers were visibly marked, and the officers announced themselves when they attempted access to Keeton's home. Doc. #101-3 at 15–16. This opinion, which suffers from other defects detailed below, is untethered from any legal standards and, therefore, is not a legal opinion.

### 5. Opinions on when deadly force is constitutionally justified

Johnson's report opines that "[t]he salient issue in the use of any kind or type of force by a law enforcement officer is that it be 'objectively reasonable' and is based on a belief that there is a threat of death or serious bodily harm to officers or others." Doc. #101-3 at 6. The report then summarizes the definition of justifiable homicide as it appears in § 97-3-15 of the Mississippi Code and then quotes the following from the IACP's Model Use of Force Policy:

> Law enforcement officers are authorized to use deadly force to protect the officer or others from what is reasonably believed to be a threat of death or serious bodily harm and to prevent the escape of a fleeing violent felon who the officer has probable cause to believe will pose significant threat of death or serious physical injury to the officer or others.

*Id*. (emphasis omitted).

Johnson's identification of the ultimate issue in this case is clearly a legal opinion. So is his statement of what Mississippi law is. However, a simple quotation of a model use of force policy is not a statement of law.

9

### 6. Opinion that deadly force was constitutionally justified

Johnson opines that "the use of deadly force … in response to the characteristically dangerous and aggressive actions of Mr. Keeton were reasonable, justified and in accordance with generally accepted standards of law enforcement." Doc. #101-3 at 17. The plaintiffs contend this is merely an opinion "that the use of deadly force in this case was constitutionally justified." Doc. #102 at 7. The defendants respond that it is not a statement on the ultimate constitutional justification of the shooting but a proper comparison of the acts of the officers to accepted standards of law enforcement. Doc. #104 at 12.

To be sure, an expert witness may opine on a defendant's compliance with standards of conduct related to the use of force without offering an impermissible legal conclusion. *Rivera v. Ring*, 810 F. App'x 859, 863–64 (11th Cir. 2020); *Upchurch v. Harcharik*, No. 3:11-cv-252, 2013 WL 12092261, at *2 (S.D. Miss. Dec. 2, 2013); *Peters v. Woodbury Cnty.*, 979 F. Supp. 2d 901, 922–23 (N.D. Iowa 2013); *Thomas v. Barze*, 57 F. Supp. 3d 1040, 1063 (D. Minn. 2014). However, where there is "no substantive difference" between the excessive force standards articulated by the expert and the ultimate legal conclusion of whether excessive force was used, the testimony is properly deemed an impermissible legal conclusion. *Mayfield v. Brewer*, No. 2:13-cv-73, 2014 WL 5467011, at *2 (S.D. Miss. Oct. 28, 2014).

"Excessive-force claims ordinarily examine the totality of the circumstances to determine whether an officer's actions were objectively unreasonable." *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (internal quotation marks omitted). But "when an officer uses deadly force, [the] objective reasonableness balancing test is constrained" such that "[t]he use of deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id*. (internal alteration and

10

quotation marks omitted). This legal standard is virtually identical to the model standard utilized by Johnson. Accordingly, because there is no substantive difference between the two standards, Johnson's opinion is an impermissible legal conclusion which must be excluded.

### 7. Opinion on constitutionality of seizure

Johnson opines that the "procedure used to search and seize complies with the law and model policy for law enforcement procedure and practices." Doc. #101-3 at 18. This opinion was based on the ultimate conclusion that "[n]o items outside of the authority in the warrant were seized." *Id*. Because the scope of a warrant is a question of law, *United States v. Russell*, 960 F.2d 421, 423 (5th Cir. 1992), Johnson's opinions on the propriety of the seizures are improper.

### 8. Opinion that the Constitution was adhered to

Johnson also opines that "constitutional law was adhered to by the Monroe County Sheriff's Department from the initiation of the criminal investigation and after the execution of the no-knock search warrant." Doc. #101-3 at 20. This is, of course an improper legal opinion.

### B. Resolution of Factual Disputes

The plaintiffs argue that the "report is … riddled with [Johnson's] resolution of factual questions and his efforts to read Keeton's mind before the shooting." Doc. #102 at 7. Specifically, the plaintiffs contend that Johnson resolved the following factual disputes: (1) that the deputies announced themselves before making entry; (2) that Keeton knew the deputies were officers rather than intruders; (3) that "there is no evidence" the agents "were in the pursuit of illegal activity;" and (4) that Keeton yelled "you son of bitches" and fired his pellet gun at the officers. *Id*. at 7–8. The defendants respond that none of these facts are disputed and that even if they were, an expert is entitled to set forth predicate facts underlying their opinions. Doc. #104 at 15.

11

"[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013). However, an expert report may "provide the foundation for [an] opinion," including factual assertions. *Id.* At trial, however, "the factual assertions … would have to be supported by admissible evidence" and the expert "could not present these facts to the jury for the purpose of describing what actually took place." *Id.* To the extent the factual statements included in Johnson's report are included for the purpose of setting forth the foundation for his opinions, they are proper. To the extent they are included for the purpose of establishing what took place, they are not.

### C. Toxicology Opinion

Johnson opines that "[t]oxicology report findings for the decease [sic] indicate his use of controlled substances just prior to the incident identified as amphetamine and methamphetamine. Therefore, it cannot be ruled out that there is the possibility that the use of these drugs may have drastically influenced and changed the behavior of an otherwise non-violent person." Doc. #101-3 at 17. The plaintiffs contend that this opinion falls outside Johnson's expertise. Doc. #102 at 8. The defendants concede that Johnson is unqualified to opine on toxicology issues but argue that the statement is not "an opinion as to how the actions of Keeton were influenced by the use of … illegal substances." Doc. #104 at 16.

Contrary to the defendants' argument, Johnson opines on the possible effect of Keeton's alleged drug use on his behavior. Specifically, Johnson opines that due to the positive drug test, "it cannot be ruled out" that Keeton acted violently. Doc. #101-3 at 17. To the extent the

12

defendants concede that such an opinion falls outside the scope of Johnson's expertise, the opinion must be excluded.[2]

### D. Reliability

Finally, the plaintiffs argue that the opinions are inadmissible because there is "no way to 'test' whether or not the officer utilized unreasonable force in this incident." Doc. #102 at 9.

The *Daubert* factors "simply are not applicable to [testimony] whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Rather, the law recognizes "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). This does not mean, however, that an expert may bypass a reliability inquiry by simply referring to experience. To the contrary, "[i]f an opinion is based solely or primarily on experience, it 'must be grounded in an accepted body of learning or experience in the expert's field.'" *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 917 (S.D. Tex. 2019). In that regard, "[t]he witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts." *Id*.

Consistent with the above, when an expert purports to state and apply generally accepted law enforcement standards, he must establish the reliability of such policies. Where, as here, an expert relies on policies promulgated by an organization like the International Association of

---

[2] Even if Johnson was qualified to opine on this subject, his opinion would be inadmissible because it is too vague to be helpful. *See Wu. v. Miss. State Univ.*, No. 1:13-cv-2, 2014 WL 5799972, at *12 (N.D. Miss. Nov. 7, 2014) ("[I]mprecise and unspecific testimony should be excluded as unhelpful to the jury." (internal quotation marks omitted)).

Chiefs of Police, he should describe the organization, the process by which they developed their standards, and the general acceptance of those standards. *Wood v. Showers*, No. 19-3267, 2020 WL 4917901, at *2 (3d Cir. Aug. 21, 2020). Johnson did none of these things. Accordingly, to the extent his opinions purport to rely on the standards of IACP, they are necessarily unreliable. *Id*. To the extent Johnson purported to opine on the existence of other standards, he offered no testimony as to the reliability of such standards.

### E. Summary

In sum, Johnson's report offers three primary opinions purporting to apply generally accepted law enforcement standards to the conduct of the defendants. However, with the exception of the standards related to the execution of no-knock warrants, each of the standards Johnson purports to apply is simply a restatement of applicable Fourth Amendment law. Accordingly, his application of these standards are improper legal opinions. Additionally, Johnson's opinion regarding the use of excessive force is based, in part, on an unsubstantiated theory that Keeton may have acted violently due to drugs. Finally, Johnson has failed to establish the reliability of any of the standards he applied. For all these reasons, Johnson's opinions must be excluded.

### V
### Conclusion

The defendants' motion to strike [101] is **GRANTED**. The expert report and testimony of Robert Johnson are excluded.

**SO ORDERED**, this 3rd day of September, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**