**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ROBBIE KEETON GEIGER, as**                                                                            **PLAINTIFFS**
**Administratrix of the Estate of Ricky
Keith Keeton, Deceased, et al.**

**V.**                                                                                        **NO. 1:16-CV-95-DMB-DAS**

**MONROE COUNTY, MISSISSIPPI,
et al.**                                                                                                    **DEFENDANTS**

## ORDER

Following the shooting death of Ricky Keith Keeton and the seizure of his property—which both occurred during the execution of a no-knock search warrant at his home—Keeton's three daughters sued Monroe County, Mississippi, and Eric Sloan, asserting federal claims and claims under Mississippi's wrongful death statute. Doc. #1. On January 2, 2018,[1] the defendants filed a motion in limine to exclude "evidence concerning Stephanie Herring's offer to take a polygraph test, her taking of a polygraph test, and the results of a polygraph test" regarding alleged misconduct by Sloan. Doc. #116. Because the polygraph evidence is irrelevant to the claims at issue, it will be excluded.

**I
Standard**

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. Evidence should not be excluded

---

[1] Keeton's daughters commenced suit on June 6, 2016. Doc. #1. United States District Judge Sharion Aycock, then assigned to the case, denied the defendants' motions for summary judgment, which the Fifth Circuit affirmed August 8, 2019. Doc. #159. Following remand by the Fifth Circuit, Judge Aycock reinstated all pending motions previously deferred pending appeal, including this motion in limine. Doc. #160. This case was assigned to the undersigned district judge on February 27, 2020, upon Judge Aycock's recusal. Doc. #162.

in limine unless it is clearly inadmissible on all potential grounds." *Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-cv-129, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (cleaned up).

**II**
**Analysis**

The plaintiffs seek to introduce evidence that Stephanie Herring, then a confidential informant working with Sloan, told Monroe County deputies that Sloan was attempting to steal money from a third party and had made sexual advances towards her. Doc. #134 at 1–2. As a part of this showing, the plaintiffs intend to introduce evidence either that Herring offered to take a polygraph examination or took one and passed it. *Id.* at 2–3. The defendants seek exclusion of the polygraph-related evidence because the plaintiffs have failed to support the polygraph evidence with competent expert testimony. Doc. #117 at 3–4. The plaintiffs respond that because the polygraph evidence will not be introduced to show that Herring was telling the truth, no expert testimony is necessary. Doc. #134 at 4.

The Fifth Circuit "has denounced the per se rule that polygraph examinations are inadmissible." *Muñoz v. State Farm Lloyds of Tex.*, 522 F.3d 568, 572 (5th Cir. 2008). Instead, "the standards announced in *Daubert* control the admissibility of such results." *Id.* However, the *Daubert* standard does not apply when the relevance of the results does not depend on the reliability of polygraph examinations, such as when a defendant employer in a Title VII case offers the results to show it had a good faith belief that a plaintiff had engaged in misconduct. *Parks v. Miss. Dep't of Transp.*, 246 F. App'x 282, 285 (5th Cir. 2007). Of course, even if the results need not satisfy the *Daubert* standard, they must, like all other evidence, satisfy the requirement of Federal Rule of Evidence 403. *United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995). That is, their probative value must not be substantially outweighed by the "danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403. Offers to take polygraph examinations must also satisfy Rule 403. *United States v. Leyva*, 564 F. App'x 76, 77 (5th Cir. 2014). Such evidence must necessarily also be relevant. Fed. R. Evid. 401.

The plaintiffs argue that the evidence of Sloan's alleged misconduct is relevant to the reasonableness of pursuing a no-knock warrant. Specifically, the plaintiffs argue that "the polygraph examination is relevant because it indicates a lack of reasonableness of the sheriff in authorizing a no-knock search based largely upon the word of Defendant Sloan and his immediate subordinate [Tony] Coxey." Doc. #134 at 2, 4. The defendants contend that even if the *Daubert* standard is inapplicable, the evidence is irrelevant because Sloan's alleged misconduct has "nothing to do with Deputy Coxey," who submitted the affidavit supporting the warrant request. Doc. #139 at 5.

In addressing the relevance of the polygraph evidence, it is necessary to understand the nature of the plaintiffs' claims. Pertinent here, the plaintiffs assert § 1983 claims against Sloan based on his execution of a no-knock search, and against the County based on its authorization of the search.

"To state a claim under Section 1983, a plaintiff must assert facts to support that a person acting under color of state law denied the plaintiff a right under the Constitution or federal law." *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016). "When a government official is sued under Section 1983, the plaintiff must allege that the official was either personally involved in the deprivation or that his wrongful actions were causally connected to it." *Id.* (quotation marks omitted). Even when a § 1983 cause of action exists, "[t]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *McLin v. Ard*, 866 F.3d 682, 688–89 (5th Cir. 2017).

3

"To state a § 1983 claim against a municipality, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020) (quotation marks omitted).

> The Fourth Amendment incorporates the common-law principle that officers must knock and announce their identity and purpose before attempting forcible entry of a dwelling. The general knock-and-announce requirement, however, is not a rigid rule of announcement that ignores countervailing law enforcement interests. Countervailing circumstances may include a reasonable suspicion that knocking and announcing the police presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. The reasonableness of the officer's decision must be evaluated as of the time he entered the dwelling.

*Bishop v. Arcuri*, 674 F.3d 456, 461 (5th Cir. 2012) (cleaned up). The reasonable suspicion determination depends on the totality of the circumstances. *United States v. Esser*, 451 F.3d 1109, 1112 (10th Cir. 2006); *United States v. Boulanger*, 444 F.3d 76, 82 (1st Cir. 2006); *United States v. Scroggins*, 361 F.3d 1075, 1081 (8th Cir. 2004); *see United States v. Banks*, 540 U.S. 31, 36 (2003) (observing in no-knock case, "we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case"). Generally, reasonable suspicion arises when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Reyes*, 963 F.3d 482, 488 (5th Cir. 2020). Reasonable suspicion can "vest through the collective knowledge of the officers involved in the search and seizure operation … so long as there is some degree of communication between the acting officer and the officer who has knowledge of the necessary facts." *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (quotation marks omitted). However, when the information justifying the search is supplied by an investigating officer, "the court's primary attention should remain on the

4

investigating officer's actions and knowledge." *United States v. Lyons*, 687 F.3d 754, 769 (6th Cir. 2012).

Thus, the plaintiffs' claims against Sloan depend on resolution of (1) whether the no-knock search was supported by appropriate reasonable suspicion so as to render it constitutional; (2) if the search was unconstitutional, whether it was caused by Sloan; and (3) if the unconstitutional search was caused by Sloan, whether Sloan could have reasonably believed his actions were legal. The plaintiffs' claims against the County require resolution of two issues—whether the search was constitutional and, if it was not, whether it is attributable to a custom or policy of the County.

The plaintiffs' theory is that Sloan (and his underling Coxey) misrepresented the justification for the no-knock search to the sheriff and that the investigation into Sloan, as corroborated by the polygraph evidence, rendered the sheriff's ultimate authorization unreasonable. Because the reasonableness inquiry focuses on "the investigating officer's actions and knowledge," the reasonableness of the sheriff's authorization is simply not relevant to whether a constitutional violation occurred. *Id.* at 769. Neither would it be relevant to whether Sloan himself acted reasonably.[2] And the reasonableness of the approval has no conceivable bearing on whether the search itself was caused by a policy or custom of the County.[3] Accordingly, the polygraph evidence is irrelevant to the claims at issue and must be excluded. Even if the evidence had some marginal relevancy, such probative value would be substantially outweighed by the danger of unfair prejudice arising from the introduction of Sloan's alleged prior bad acts.

---

[2] While the reasonableness of the sheriff's actions would likely be relevant to a qualified immunity defense to an individual claim brought against him, no such claim is made here.

[3] Mere authorization of a search by a final policymaker, such as a sheriff, cannot give rise to municipal liability. *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 755 (S.D.N.Y. 2005); *see generally City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates … is not a delegation to them of the authority to make policy."); *but see Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1111–12 (C.D. Cal. 2006). "It would … be a different matter if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Praprotnik*, 485 U.S. at 130.

## III
## Conclusion

The defendants' motion in limine [116] is **GRANTED**. Evidence related to a polygraph examination of Herring—including an offer to take a polygraph test, her taking of a polygraph test, and the results of a polygraph test—is **EXCLUDED**.

**SO ORDERED**, this 8th day of September, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**